# EXHIBIT 1

F I L E D
Clerk of the Superior Court

MAY 3 1 2018

By: _____ Deputy

1    FINKELSTEIN & KRINSK LLP
    Jeffrey R. Krinsk, Esq. (SBN 109234)
2    jrk@classactionlaw.com
    Joshua C. Anaya, Esq. (265444)
3    jca@classactionlaw.com
    Trenton R. Kashima, Esq. (SBN 291405)
4    trk@classactionlaw.com
    550 West C St., Suite 1760
5    San Diego, California 92101
    Telephone: (619) 238-1333
6    Facsimile:  (619) 238-5425

7    Attorneys for Plaintiffs
    and the Putative Classes

8

        SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                  COUNTY OF SAN DIEGO

10

11   Jane Roe No. 1, Jane Roe No. 2, Jane Roe No. 3, and Jane Roe No. 4,  individually and on behalf of all others similarly situated,

    Case No: **37-2018-00028044-CU-OE-CTL**

12         Plaintiffs,

    **CLASS AND COLLECTIVE ACTION COMPLAINT FOR VIOLATION OF THE FLSA AND STATE LAW**

13         vs.

14

    **DEMAND FOR JURY TRIAL**

15   DÉJÀ VU SERVICES, INC., HARRY MOHNEY, GRAPEVINE
16   ENTERTAINMENT, INC. d/b/a DÉJÀ VU SHOWGIRLS, CATHAY
17   ENTERTAINMENT, INC. / H.D.V. NO. 3, LLC d/b/a DÉJÀ VU SHOWGIRLS, NITE LIFE EAST, LLC d/b/a LITTLE
18   DARLINGS, SP STAR ENTERPRISE, Inc. d/b/a DÉJÀ VU, COLDWATER, LLC d/b/a
19   DÉJÀ VU SHOWGIRLS, NEW WAVE, INC. d/b/a VENUS FAIRE, EYEFULL, INC. d/b/a
20   DÉJÀ VU SHOWGIRLS, CBDM REDLANDS, LLC d/b/a LARRY FLYNT'S
21   HUSTLER CLUB, 3610 BARNETT AVE., LLC d/b/a ADULT SUPERSTORE, 4805
22   CONVOY, INC. d/b/a DREAMGIRLS, C.B. & D.M. ENTERTAINMENT, INC. d/b/a
23   DÉJÀ VU SHOWGIRLS, JOLAR CINEMA OF SAN DIEGO, LTD. d/b/a JOLAR
24   CINEMA SHOWGIRLS, PACERS, INCORPORATED d/b/a LARRY FLYNT'S
25   HUSTLER CLUB, SHOWGIRLS OF SAN DIEGO, INC. d/b/a DÉJÀ VU SHOWGIRLS;
26   BIJOU - CENTURY, LLC d/b/a CENTURY THEATRE, BT CALIFORNIA, LLC d/b/a
27   BROADWAY SHOWGIRLS, CHOWDERHOUSE, INC. d/b/a HUNGRY I,
28   DEJA VU - SAN FRANCISCO, LLC d/b/a CENTERFOLDS. DEJA VU SHOWGIRLS

COMPLIANT

1   **TEMPTATIONS / LITTLE DARLINGS,**
    **GOLD CLUB - SF, LLC d/b/a GOLD CLUB,**
2   **MARKET ST. CINEMA, LLC d/b/a**
    **MARKET STREET CINEMA, S.A.W.**
3   **ENTERTAINMENT, LTD. d/b/a LARRY**
    **FLYNT'S HUSTLER CLUB / CONDOR,**
4   **SAN FRANCISCO GARDEN OF EDEN,**
    **LLC d/b/a GARDEN OF EDEN, SAN**
5   **FRANCISCO ROARING 20'S, LLC, d/b/a**
    **ROARING 20'S, STOCKTON**
6   **ENTERPRISES, LLC d/b/a DÉJÀ VU**
    **SHOWGIRLS, BOB MARTIN, INC. d/b/a**
7   **DÉJÀ VU EROTIC ULTRA LOUNGE, and**
    **DOES 1-200, jointly and severally,**
8
    **Defendants.**
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

**INTRODUCTION**

1.      This is a class action brought by Plaintiffs Jane Roes 1-4 (hereinafter collectively referred to as "Plaintiffs") against Defendants Déjà Vu Services, Inc., Harry Mohney, and the Déjà Vu Affiliated Nightclubs Located in the State of California (hereinafter collectively referred to as "Defendants").

2.      The Class which Plaintiffs seek to represent is composed of people who, during the relevant time period, worked as exotic dancers at Déjà Vu Affiliated Nightclubs in California.

3.      Plaintiffs contend that all class members were denied their fundamental rights under applicable federal and state wage and hour laws, causing financial loss and injury. Specifically, Plaintiffs complain that Defendants misclassified Plaintiffs and all other members of the Class as independent contractors, as opposed to employees, at all times in which they worked as dancers at Defendants' adult nightclubs located throughout California. Plaintiffs contend that Defendants failed to pay Plaintiffs and all other members of the Class the minimum and overtime wages and other benefits to which they were entitled under applicable federal and California state laws. Additionally, Defendants engaged in unlawful tip-sharing by requiring dancers in the Class to share gratuities given to them by patrons with Defendants and their employees, such as doormen and DJs. Plaintiffs, therefore, bring this class action seeking damages, back pay, restitution, liquidated damages, injunctive and declaratory relief, civil penalties, prejudgment interest, reasonable attorneys' fees and costs, and any and all other relief the Court deems just, reasonable and equitable under the circumstances.

## I.      JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action pursuant to Article 6, § 10 of the California Constitution, California Business and Professions Code § 17203 and Code of Civil Procedure §§ 382 and 410.10.  This Court has jurisdiction over Defendants because they are registered to conduct, and do conduct, substantial business within California and San Diego County.

5.      This Court has jurisdiction over Plaintiffs' Fair Labor Standards Act ("FLSA") claims as 29 U.S.C. § 216(b) authorizes private rights of action to recover damages for violations of the FLSA's wage and hour provisions on any court, which means state or federal.

6.     Venue is proper in this Court pursuant to Code of Civil Procedure § 395 because Defendants operate their business and employ the class members within this County, and a substantial or significant portion of the conduct complained of herein occurred and continues to occur within this County.

## II.     <u>PARTIES AND STANDING</u>

7.     Plaintiff Jane Roe No. 1 ("Roe No. 1") is a resident of San Bernardino County, California. Roe No. 1 worked as an exotic dancer for Defendants at Déjà Vu Showgirls in City of Industry, California during the class period and is a member of the proposed class. Like other class members, when Roe No. 1 worked in that capacity, she was: (1) misclassified as an independent contractor, and as a result was not paid any wages (or provided other benefits and rights) to which she was entitled as an employee; and (2) required to split tip income as described more fully below. Roe No. 1 sues on her own behalf and as a proposed class representative on behalf of similarly situated individuals. She sues under a fictitious name, Jane Roe No. 1, due to the highly sensitive and personal nature of the details about Plaintiffs in this action, and for additional reasons described below.

8.     Plaintiff Jane Roe No. 2 ("Roe No. 2") is a resident of San Bernardino County, California. Roe No. 2 worked as an exotic dancer for Defendants at Déjà Vu Showgirls in Bakersfield, California during the class period and is a member of the proposed class. Like other class members, when Roe No. 2 worked in that capacity, she was: (1) misclassified as an independent contractor, and as a result was not paid any wages (or provided other benefits and rights) to which she was entitled as an employee; and (2) required to split tip income as described more fully below. Roe No. 2 sues on her own behalf and as a proposed class representative on behalf of similarly situated individuals. She sues under a fictitious name, Jane Roe No. 2, due to the highly sensitive and personal nature of the details about Plaintiffs in this action, and for additional reasons described below.

9.     Plaintiff Jane Roe No. 3 ("Roe No. 3") is a resident of Los Angeles County, California. Roe No. 3 worked as an exotic dancer for Defendants at Déjà Vu Showgirls in North Hollywood, California during the class period and is a member of the proposed class. Like other

class members, when Roe No. 3 worked in that capacity, she was: (1) misclassified as an independent contractor, and as a result was not paid any wages (or provided other benefits and rights) to which she was entitled as an employee; and (2) required to split tip income as described more fully below. Roe No. 3 sues on her own behalf and as a proposed class representative on behalf of similarly situated individuals. She sues under a fictitious name, Jane Roe No. 3, due to the highly sensitive and personal nature of the details about Plaintiffs in this action, and for additional reasons described below.

10.   Plaintiff Jane Roe No. 4 ("Roe No. 4") is a resident of San Diego County, California. Roe No. 4 worked as an exotic dancer for Defendants at Déjà Vu Showgirls in San Diego, California and Torrance, California during the class period and is a member of the proposed class. Like other class members, when Roe No. 4 worked in that capacity, she was: (1) misclassified as an independent contractor, and as a result was not paid any wages (or provided other benefits and rights) to which she was entitled as an employee; and (2) required to split tip income as described more fully below. Roe No. 4 sues on her own behalf and as a proposed class representative on behalf of similarly situated individuals. She sues under a fictitious name, Jane Roe No. 4, due to the highly sensitive and personal nature of the details about Plaintiffs in this action, and for additional reasons described below.

11.   Plaintiffs sue under fictitious names due to the highly sensitive and personal nature of the details about Plaintiffs in this action and because (1) there is a significant social stigma associated with the nude and semi-nude "dancing" that exotic dancers, also known as "strippers," perform; (2) there are risks inherent in working as an exotic dancer, including risk of injury by current or former customers of Defendants if an exotic dancer's name or address is disclosed; (3) Plaintiffs would be hesitant to maintain this action enforcing fundamental employee rights if their names were to be forever associated with Defendants' Nightclubs, which could affect their prospects for future employment by others; and (4) Plaintiffs wish to protect their rights to privacy. Plaintiffs' concerns are reasonable and justified. At the Nightclubs, it is customary for the exotic dancers to use pseudonyms or stage names for privacy and personal safety reasons. *See generally Does I thru XXIII v. Advanced Textile Corp.,* 214 F.3d 1058, 1067-1068 (9th Cir. Cal. 2000) *accord Starbucks Corp. v.*

*Superior Court* (2008) 168 Cal.App.4th 1436, n.7 ("[W]e allow parties to use pseudonyms in the 'unusual case' when nondisclosure of the party's identity 'is necessary . . . to protect a person from harassment, injury, ridicule or personal embarrassment.' . . . We join our sister circuits and hold that a party may preserve his or her anonymity in judicial proceedings in special circumstances when the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity.").

12.     Plaintiffs intend to file additional Consents to Become Party Plaintiff executed by similarly situated individuals as they are secured. Many similarly situated individuals, however, will be afraid to join the lawsuit as party plaintiffs because of reasonable fears relating to privacy, personal safety, and/or the potential for retaliation. In order to allow them to pursue their rights under the FLSA without jeopardizing their privacy, personal safety, or income, Plaintiffs pray that the Court permit party plaintiffs to keep their names and addresses concealed. *See generally Does I thru XXIII,* 214 F.3d at 1071 ("complaining employees are more effectively protected from retaliation by concealing their identities than by relying on the deterrent effect of *post hoc* remedies under FLSA's anti-retaliation provision").

13.     Defendants are business entities and/or individuals that jointly employ and control the work of members of the Class that work or have worked at Déjà Vu Affiliated Nightclubs throughout California.

14.     The Déjà Vu Affiliated Nightclubs are businesses that, within the state of California, currently are, or that at any time during the Class Period were, either: A) parties to an agreement or contract with Déjà Vu  Services, Inc. whereby they receive(d) either consulting or management services, or licensing rights, from Déjà Vu  Services, Inc.; B) parties to an agreement or contract with Global Licensing, Inc., whereby they receive(d) licensing rights from Global Licensing, Inc.; C) owned, either wholly or in part, and directly or indirectly, by either Harry Mohney or Jason "Cash" Mohney; or D) tenants of Harry Mohney or Jason "Cash" Mohney, either directly or indirectly.

15.     The senior management of all Déjà Vu Affiliated Nightclubs throughout California is delegated to Déjà Vu Services, Inc., Harry Mohney and/or their agents. In turn, the employment policies affecting class members at the Déjà Vu Affiliated Nightclubs in California are dictated,

determined, controlled and perpetuated in material part by Déjà Vu Services, Inc. and Harry Mohney. As such, Déjà Vu Services, Inc. and Harry Mohney are joint employers of all dancers under applicable federal and state wage and hour laws, including the FLSA.

16.     Defendant Déjà Vu Services, Inc. (hereinafter "Déjà Vu Services" or "DVS") is a Michigan Corporation maintaining offices in North Hollywood, California, San Diego, California and Lansing, Michigan. The registered office for Déjà Vu Services is 8252 E. Lansing Road, Durand, Michigan, 48429. Déjà Vu Services also maintains corporate offices in North Hollywood and San Diego, California. From those offices DVS manages, operates and/or controls the business operations and employment and wage policies at the numerous Déjà Vu Affiliated Nightclubs doing business under "Déjà Vu," "Déjà Vu Showgirls," "Déjà Vu Dream Girls," "Déjà Vu Centerfolds," and/or other trade names nationwide, including the Déjà Vu Affiliated Nightclubs where Plaintiffs and all Class members worked.

17.     Defendant Harry Mohney ("Mohney") is an individual residing in California, Nevada and/or other foreign addresses. Upon information and belief, Mohney owns, manages and/or controls Déjà Vu Services and each of the Déjà Vu Affiliated Nightclubs, directly or indirectly. Together with DVS, Mohney perpetuates the employment policies affecting Class members that are challenged in this lawsuit. Mohney maintains offices in California where he conducts this work and makes these decisions that affect Class members in California. Mohney manages, operates and/or controls the business operations and employment policies at the numerous nightclubs doing business under "Déjà vu," "Déjà Vu Showgirls," "Déjà Vu DreamGirls," "Déjà Vu Centerfolds," and/or other trade names nationwide, including the Déjà Vu Affiliated Nightclubs where Plaintiffs and all Class members worked.

18.     Déjà Vu Services and Mohney are joint employers of all Class members and as such are jointly and severally liable for any violations of the wage and hour laws set forth below. Plaintiffs seek to certify a class of all exotic dancers who worked at Déjà Vu Affiliated Nightclubs in California that were directly or indirectly owned, operated, controlled and/or managed by Déjà Vu Services and/or Mohney. Déjà Vu Services and Mohney manage, operate and control the significant business operations in each Déjà Vu Affiliated Nightclub, and dictate the common employment

policies applicable to each nightclub, including but not limited to the decisions: (1) to classify dancers as independent contractors, as opposed to employees, and; (2) to require that dancers share their tips. Those policies, which affected and harmed Class members in California, were established and implemented, in significant and material part, at Déjà Vu Services' and Mohney's offices and places of business in California.

19.     DVS, its officers and consultants, including Mohney, have been involved in the decisions to classify exotic dancers working at the Déjà Vu Affiliated Nightclubs as independent contractors, as opposed to employees, and to perpetuate and maintain that classification system. As part of those discussions, DVS, its officers and consultants, including Mohney, have discussed compliance with the labor codes relating to the dancer classification issue and made the decision to try to have dancers "elect" to be independent contractors and waive their statutory rights under the wage and hour laws.

20.     Each Déjà Vu Affiliated Nightclub has a common structure where it is held by a nominal corporation, but substantial senior management, financial, legal and other critical operational functions are delegated to affiliated companies which all come under the common control of DVS, its officers and consultants, including Mohney; all or significant senior management functions of each nightclub corporation are delegated to Déjà Vu Services, a company indirectly owned by Mohney. Other key business functions are delegated to and performed by other affiliated companies controlled by Mohney.

21.     DVS currently makes its services available to each of the Déjà Vu Affiliated Nightclubs and licenses various "Déjà Vu" trademarks to the clubs. DVS establishes policies that confirm that it controls the workplace at all of the Déjà Vu Affiliated Nightclubs, including those pertaining to the work and classification of exotic dancers in the Class. Upon information and belief, Déjà Vu Services performs the same business functions with respect to all Déjà Vu Affiliated Nightclubs, including management and consultation functions regarding the employment classification of dancers and tip sharing practices.

22.     Mohney, directly or indirectly, holds a significant ownership share in all or certain Déjà Vu Affiliated Nightclubs. DVS, its officers and consultants, including Mohney, make decisions

regarding the Déjà Vu Affiliated Nightclubs (including employment policies) from their offices in California. Specifically, a senior DVS consultant lives in California and, in conjunction with others, implements, directs, and creates DVS policies on behalf of the Déjà Vu Affiliated Nightclubs.

23.     DVS employs a number of "consultants" including Mohney. These individuals make decisions regarding DVS and the Déjà Vu Affiliated Nightclubs (including employment policies) from their offices in California.

24.     Certain DVS officers and "consultants" also manage the Déjà Vu Affiliated Nightclubs. For instance, one DVS consultant - who resides and works in California - is also the President of a holding company that maintains ownership interests in numerous Déjà Vu Affiliated Nightclubs. Other managers of Déjà Vu Affiliated Nightclubs report to, are controlled by, and answer to, DVS's officers and consultants. Through this, *inter alia*, DVS and Mohney control the operations of the Déjà Vu Affiliated Nightclubs and the people who work there, including dancers in the class.

25.     Upon information and belief, at all relevant times, Mohney has played a significant role in managing, directing and controlling the day-to-day business operations of Déjà Vu Services, all of the Déjà Vu Affiliated Nightclubs, and Modern Bookkeeping.

26.     Upon information and belief, at all relevant times Mohney was employed by Déjà Vu Services and conducted his work, supervision, and direction of the Déjà Vu Affiliated Nightclubs' operations from his offices in California, Nevada, and/or Michigan.

27.     Upon information and belief, Mohney, Déjà Vu Services and the Déjà Vu Affiliated Nightclubs employ "consulting" agreements to allow Mohney and Déjà Vu Services to control, operate, direct, and manage the business affairs of the Déjà Vu Affiliated Nightclubs, including those that affect dancer classification and tip sharing policies.

28.     At all relevant times, Mohney has been the *de facto* chief corporate officer of Déjà Vu Services and the Déjà Vu Affiliated Nightclubs; has had a significant ownership interest in Déjà Vu Services and the Déjà Vu Affiliated Nightclubs; and has had operational control over significant aspects of the business functions of Déjà Vu Services and the Déjà Vu Affiliated Nightclubs, including those relating to the employment classification of dancers; the determination of dancers'

wages (or more accurately, the lack thereof); and tip-sharing requirements applicable to dancers working at the nightclubs. Mohney played a significant role in creating and maintaining the business model where dancers working at the Déjà Vu Affiliated Nightclubs were to be classified as independent contractors and required to share their tips. As such, Mohney is jointly and severally liable to Plaintiffs and the Class, along with the other Defendants, for damages stemming from Déjà Vu Services and the other Déjà Vu Affiliated Nightclubs' failure to comply with applicable wage and hour laws.

29.     At all relevant times, DVS and Mohney jointly employed all exotic dancers working in the Déjà Vu Affiliated Nightclubs, managed, directed and controlled the operations in each Déjà Vu Affiliated Nightclub, and dictated the common employment policies applicable in each nightclub, including but not limited to the decisions: (1) to misclassify dancers as independent contractors, as opposed to employees; (2) to require that dancers share their tips with Defendants; (3) to require that dancers further share their tips with Defendants' managers, doormen, floor walkers, DJs and other employees who do not usually receive tips, by paying "tip-outs;" (4) to not pay any dancers any wages; (5) to demand improper and unlawful payments from class members; (6) to adopt and implement employment policies which violate the FLSA and/or California wage and hour laws, and; (7) to threaten retaliation against any dancer attempting to assert her statutory rights to be recognized as an employee. DVS and Mohney created the common business model employed at each Déjà Vu Affiliated Nightclub regarding dancer classification and tip-sharing and require that the practices continue.

30.     All named Defendants agreed and conspired among themselves, along with any third party owners of certain of the Déjà Vu Affiliated Nightclubs throughout California to unlawfully: (1) misclassify dancers as independent contractors, as opposed to employees; (2) require that dancers share their tips with Defendants; (3) require that dancers further share their tips with Defendants' managers, doormen, floor walkers, DJs and other employees who do not usually receive tips, by paying "tip-outs;" (4) not pay any dancers any wages; (5) demand improper and unlawful payments from Class members; (6) adopt and implement employment policies which violate the FLSA and California wage and hour laws, and; (7) threaten retaliation against any dancer attempting to assert

her statutory rights to be recognized as an employee. The unlawful agreements and conspiracies between Defendants and third parties in the enterprise were entered into as part of a strategy to maximize revenues and profits and to violate Class members' statutory rights.

31.     Defendants knew or should have known that the business model employed was unlawful as applicable laws confirm that all money given to dancers by patrons was defined as a gratuity and the sole property of the dancer. Despite this, Defendants continued to willfully engage in the acts described below misclassifying dancers and sharing tip income in violation of their legal duties.

32.     At all relevant times, Defendants owned and operated a nightclub business engaged in interstate commerce and which utilized goods moving in interstate commerce. For example, goods sold at the Déjà Vu Affiliated Nightclubs moved in interstate commerce. DVS and Mohney own, manage, and control the business operations at numerous nightclubs in California doing business under "Déjà Vu" and other tradenames. On information and belief, during the relevant time period, the annual gross revenues of each Defendant exceeded $500,000 per year.

33.     By reason of the foregoing, Defendants, along with the Déjà Vu Affiliated Nightclubs, were at all relevant times enterprises engaged in commerce as defined in 29 U.S.C. §203(r) and §203(s). Defendants and the Déjà Vu Affiliated Nightclubs constitute an "enterprise" within the meaning of 29 U.S.C. §203(r)(1), because they perform related activities through common control for a common business purpose. At all relevant times, Defendants were enterprises engaged in commerce within the meaning of 29 U.S.C. §206(a) and §207(a).

34.     The true names and capacities, whether individual, corporate, associate or otherwise, of each of the Defendants designated herein as DOES are unknown to Plaintiffs at this time and therefore said Defendants are sued by such fictitious names. Plaintiffs will amend this Complaint to show their true names and capacities when ascertained. Plaintiffs are informed and believe and thereon allege that each Defendant designated herein as a DOE defendant is legally responsible in some manner for the events and happenings herein alleged and in such manner proximately caused damages to Plaintiffs as hereinafter further alleged.

35.     Plaintiffs are informed and believe and thereon allege that each of the Defendants was

1    acting as the agent, employee, partner, or servant of each of the remaining Defendants and was

2    acting within the course and scope of that relationship, and gave consent to, ratified, and authorized

3    the acts alleged herein to each of the remaining Defendants.

4    36.    On information and belief, Plaintiffs anticipate naming, and possibly substituting,

5    additional business entities or individuals because Defendant owns, operates, and/or controls local

6    nightclubs while maintaining shell corporations and/or sham agreements to create the appearance

7    that it does not have ownership and/or control of the nightclubs.

8    ### III.    GENERAL ALLEGATIONS APPLICABLE TO ALL COUNTS

9    37.    The FLSA and California Labor Code and Industrial Welfare Commission (IWC)

10   Wage Orders applied to Plaintiffs and the Class at all times in which they worked at the Déjà Vu

11   Affiliated Nightclubs.

12   38.    No exceptions to the application of the FLSA or California wage and hour laws apply

13   to Plaintiffs and the Class. For example, no Class member has ever been a professional or artist

14   exempt from the provisions of those statutes. The exotic dancing performed by Class members while

15   working at the Déjà Vu  Affiliated Nightclubs does not require invention, imagination, or talent in a

16   recognized field of artistic endeavor, and Class members have never been compensated by

17   Defendants on a set salary, wage, or fee basis. Rather, Class members' sole source of income while

18   working at the Déjà Vu Affiliated Nightclubs were tips given to them by patrons.

19   39.    At all relevant times, Plaintiffs and each member of the Class, defined below, were

20   employees of Defendants under the FLSA and applicable California wage and hour laws.

21   40.    At all relevant times, Defendants were the employers of Plaintiffs and each member

22   of the Class, defined below, under the FLSA and other applicable law. Defendants suffered or

23   permitted Class members to work. Defendants, directly or indirectly, employed and exercised

24   significant control over the Class members' wages, hours, and working conditions.

25   41.    At all relevant times, all Defendants were the joint employers of Plaintiffs and

26   members of the Class. Under the FLSA and/or California laws, Plaintiffs' and Class members'

27   employment for one Defendant is not completely disassociated from their employment by the other

28   Defendant(s). DVS, Mohney, and the Déjà Vu Affiliated Nightclubs do not act entirely independent

- 10 -
COMPLAINT

1   of each other and are not completely dissociated with respect to the employment of Plaintiffs and the

2   Class. DVS and Mohney maintain significant control over Plaintiffs and other Class members while

3   working at the Déjà Vu Affiliated Nightclubs. DVS and Mohney play significant roles in

4   establishing, maintaining and directing the working and employment policies that are to be applied

5   to Class members while working at the Déjà Vu Affiliated Nightclubs. DVS and Mohney benefit

6   financially from the work Class members perform while working at the Déjà Vu Affiliated

7   Nightclubs. As joint employers of Plaintiffs and members of the Class, DVS and Mohney are

8   responsible both individually and jointly for compliance with all of the applicable provisions of the

9   FLSA and other applicable wage and hour laws. 29 C.F.R. § 791.2(a) and (b).

10          42.    During the relevant time period, the employment terms, conditions, and policies that

11  applied to Plaintiffs were the same as those applied to the other Class members who worked as

12  exotic dancers at all Déjà Vu Affiliated Nightclubs in all material respects.

13          43.    Throughout the relevant time period, Defendants' policies and procedures regarding

14  the classification of all exotic dancers (including Plaintiffs) at the Déjà Vu Affiliated Nightclubs and

15  treatment of dance tips were the same.

16          44.    As a matter of common business policy, Defendants systematically misclassified

17  Plaintiffs and all Class members as independent contractors, as opposed to employees. Defendants'

18  classification of Plaintiffs as independent contractors was not due to any unique factor related to

19  their employment or relationship with Defendants. Rather, as a matter of common business policy,

20  Defendants routinely misclassified all exotic dancers as independent contractors as opposed to

21  employees. As a result of this uniform misclassification, Plaintiffs and the members of the Class

22  were not paid the minimum and overtime wages required, were deprived of other statutory rights and

23  benefits, and therefore, suffered harm, injury and incurred financial loss.

24          45.    Plaintiffs and members of the Class incurred financial loss, injury, and damage as a

25  result of Defendants' common practices misclassifying them as independent contractors and failing

26  to pay them minimum and overtime wages in addition to the tips that they were given by patrons.

27  Plaintiffs' injuries and financial loss were caused by Defendants' application of those common

28  policies in the same manner as they were applied to absent Class members.

46.     During the relevant time period, no Class member received any wages or other compensation from Defendants. Members of the Class generated their income solely through the tips received from patrons when they performed exotic table, chair, couch, lap and/or VIP room dances (collectively referred to herein as "dance tips").

47.     All monies Class members like Plaintiffs received from patrons when they performed exotic dances were tips, not wages or service fees. Tips belong to the person they are given to. Dance tips were given by patrons directly to dancers in the Class and therefore, belong to dancers in the Class, not Defendants.

48.     The full amount dancers in the Class are given by patrons in relation to exotic dances they perform are not taken into Defendants' gross receipts, with a portion then paid out to the dancers. Neither Defendants nor any of their affiliated companies issue W-2 forms, 1099 forms or any other documents to Class members indicating any amounts being paid from their gross receipts to Class members as wages.

49.     Plaintiffs and members of the Class are tipped employees as they are engaged in an occupation in which they customarily and regularly receive more than $30 a month in tips. No tip credits offsetting any minimum wages due, however, are permitted. Therefore, as employees of Defendants, Class members are entitled to: (a) receive the full minimum wages due, without any tip credit, reduction or other offset; and (b) to retain the full amount of any dance tips and monies given to them by patrons when they perform exotic dances.

50.     Defendants' misclassification of Plaintiffs and other Class members as independent contractors was designed to deny Class members their fundamental rights as employees to receive minimum wages, to demand and retain portions of tips given to Class members by patrons, and done to enhance Defendants' profits at the expense of the Class.

51.     Defendants' misclassification of exotic dancers like Plaintiffs was willful. Defendants knew or should have known that Plaintiffs and the other dancers performing the same job functions were improperly misclassified as independent contractors.

52.     Employment is defined with "striking breadth" in the wage and hour laws. *Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 325-26, 112 S.Ct. 1344, 1349-50 (1992). The

determining factor as to whether dancers like Plaintiffs are employees or independent contractors under the FLSA is not the dancer's election, subjective intent or any contract. *Rutherford Food Corp. v. McComb,* 331 U.S. 722, 727 (1947). Rather, the test for determining whether an individual is an "employee" under the FLSA is the economic reality test. Under the economic reality test, employee status turns on whether the individual is, as a matter of economic reality, in business for herself and truly independent, or rather is economically dependent upon finding employment in others.

53.     Any contract which attempts to have workers in the Class waive, limit or abridge their statutory rights to be treated as an employee under the FLSA or other applicable wage and hour laws is void, unenforceable, unconscionable and contrary to public policy. Workers in the Class cannot validly "elect" to be treated as employees or independent contractors under threat of adverse treatment. Nor can workers in the Class agree to be paid less than the minimum wage.

54.     Despite this, Defendants unfairly, unlawfully, fraudulently and unconscionably attempt to coerce dancers in the Class to waive their statutory rights and elect to be treated as independent contractors. Defendants threaten to penalize and discriminate against dancers in the Class if they assert their statutory rights such as through termination and the confiscation of all dance tips, among other adverse conditions and retaliations. Any such retaliation based on the assertion of statutory rights under the wage and hour laws is unlawful. 29 U.S.C. § 215(a)(3). Further, it is unlawful for an employer to even threaten to discharge, demote, terminate or discriminate in the terms and conditions of employment because an employee has made a bona fide complaint against an employer for a violation of wage and hour laws. This protection encompasses the exercise of statutory rights on the employees own behalf and on behalf of others. Any actual or threatened retaliation against an employee for the assertion of wage and hour law claims violates the state's fundamental public policy to protect the payment of wages and employee's rights.

55.     Under the applicable FLSA test, courts utilize several factors to determine economic dependence and employment status. They are: (i) the degree of control exercised by the alleged employer; (ii) the relative investments of the alleged employer and employee; (iii) the degree to which the employee's opportunity for profit and loss is determined by the employer; (iv) the skill

1   and initiative required in performing the job; (v) the permanency of the relationship; and (vi) the

2   degree to which the alleged employee's tasks are integral to the employer's business.

3        56.      By contrast, California has opted for the "ABC Test." On April 30, 2018, the

4   California Supreme Court issued its long-awaited opinion in *Dynamex Operations W., Inc. v. Super.*

5   *Ct.*, 416 P.3d 1, 5 (Cal. 2018), clarifying the standard for determining whether workers in California

6   should be classified as employees or as independent contractors for purposes of the wage orders

7   adopted by California's Industrial Welfare Commission. In so doing, the Court narrowed the

8   definition of independent contractor, holding that there is a presumption that individuals are

9   employees and that an entity classifying an individual as an independent contractor bears the burden

10  of establishing that such a classification is proper.

11       57.      To meet this burden, the **hiring** entity must establish *each* of the following three

12  factors, commonly known as the "ABC test":

13      a.    that the worker is free from the control and direction of the hiring entity in connection
        with the performance of the work, both under the contract for the performance of the
14          work and in fact; *and*
        b.    that the worker performs work that is outside the usual course of the hiring entity's
15          business; *and*
        c.    that the worker is customarily engaged in an independently established trade,
16          occupation, or business of the same nature as the work performed.

17       58.      The totality of circumstances surrounding the employment relationship between

18  Defendants and the dancers in the Class working at the Déjà Vu Affiliated Nightclubs establishes

19  economic dependence by the dancers on Defendants and employee status. Here, as a matter of

20  economic reality, Plaintiffs and all other Class members are not in business for themselves and truly

21  independent, but rather are economically dependent upon finding employment in others, namely

22  Defendants. The dancers are not engaged in occupations or businesses distinct from that of

23  Defendants. Rather, their work is the basis for Defendants' business. Defendants obtain the patrons

24  who desire exotic dance entertainment and provide the workers who conduct the exotic dance

25  services on behalf of Defendants. Defendants retain pervasive control over the nightclub operation as

26  a whole, and the dancers' duties are an integral part of the operation.

27       59.      Thus, whether analyzed according to the FLSA's economic reality test or California's

28  more rigorous "ABC test," it is clear that Defendants miscast Plaintiffs and the Class as independent

1    contractors.

2        **A.    *Degree Of Control – Plaintiffs And The Other Dancers Exercise No Control Over*
3             *Their "Own" Or Their Employers' Business'***

4        60.    Plaintiffs and the other members of the Class do not exert control over a meaningful

5    part of the nightclub business and do not stand as separate economic entities from Defendants.

6    Defendants exercise control over all aspects of the working relationship with Plaintiffs and the other

7    dancers in the nightclubs.

8        61.    Class members' economic status is inextricably linked to those conditions over which

9    Defendants have complete control. Plaintiffs and the other dancers are completely dependent on the

10   Déjà Vu Affiliated Nightclubs for their earnings. The club controls all of the advertising and

11   promotion without which dancers like Plaintiffs could not survive economically. Moreover,

12   Defendants create and control the atmosphere and surroundings at the Déjà Vu Affiliated

13   Nightclubs, the existence of which dictates the flow of patrons into the club. The dancers have no

14   control over the customer volume or the atmosphere at each of the nightclubs.

15       62.    Defendants employ guidelines and rules dictating the way in which dancers like

16   Plaintiffs must conduct themselves while working at the Déjà Vu Affiliated Nightclubs. Defendants

17   dictate: the hours of operation; length of shifts dancers must work; the show times during which a

18   dancer may perform; minimum dance tips; determine the sequence in which a dancer may perform

19   on stage during her stage rotation; the format and themes of dancers' performances (including their

20   costuming and appearances); theme nights; conduct while at work (*i.e.*, that they be on the floor as

21   much as possible when not on stage and mingle with patrons in a manner which supports

22   Defendants' general business plan); tip sharing; paying "tipouts" to employees who do not normally

23   receive tips from patrons; requirements that dancers help sell drinks or "Déjà Vu " branded novelties

24   to patrons; and all other terms and conditions of employment.

25       63.    Defendants require Plaintiffs and the other dancers in the Class to schedule work

26   shifts. Defendants require that each shift worked by a dancer be of a minimum number of hours.

27   Further, Defendants require dancers like Plaintiffs to clock-in and clock-out (or otherwise check in

28   or report) at the beginning and end of each shift. If late or absent for a shift, a dancer is subject to

fine, penalty, or reprimand by Defendants. Once a shift starts, a dancer, like Plaintiffs, are required to complete the shift and cannot leave early without penalty or reprimand.

64.     Defendants impose other rules on dancers such as those restricting smoking breaks, the length of breaks, and how many dancers can take such breaks at a time.

65.     While working at the Déjà Vu Affiliated Nightclubs, dancers like Plaintiffs perform exotic table, chair, couch, lap and/or VIP room dances for patrons offering them "dance tips." Defendants, not the dancers, set the minimum tip amount that dancers must collect from patrons when performing exotic dances. Defendants announce the minimum tip amounts to patrons in the nightclub wishing to view dances.

66.     Defendants dictate the manner and procedure in which dance tips are collected from patrons and tracked. Each time a dancer performs an exotic dance for a patron and receives a dance tip, the dancer is required to immediately account to Defendants for their time and any dance tip given to them by the patron. Additionally, Defendants employ other employees called "checkers," doormen and/or floor walkers to watch dancers work, count private dances they perform, and record the amount of any dance tips received. At the end of a work shift, dancers like Plaintiffs are required to clock out and account to Defendants for all dances performed for the patrons of the nightclub. Then, in addition to any base "rent" payment, the dancer is required to pay a portion of each dance tip given to them by patrons over to Defendants as "rent." The rent payment typically exceeds 30% of each dance tip. Alternatively, in clubs where rent is not collected on a per-dance basis, the base "rent" the dancer must pay the nightclub at the end of a shift is higher and ultimately funded through tip-sharing.

67.     The entire sum a dancer receives from a patron in relation to a dance is not given to Defendants (and/or the nightclubs) and taken into their gross receipts. Rather, the dancers keep their share of the payment under the tip-sharing policy and only pay over to Defendants and the nightclub the portion demanded as "rent" (e.g., $7 from each $20 dance tip received). As a result, there is no pay out by Defendants to the dancer of any wages. Defendants (and/or the nightclubs) issue no 1099 forms, W-2 forms, or other documents to any dancers showing any sums being paid to dancers as wages.

68.    Defendants establish the share or percentage which each dancer is required to pay them for each type of dance they receive dance tips for during the work shift. In addition, per-dance amounts or "tip-outs" must be paid by dancers (e.g. approx. $1 for each dance) to the nightclub manager, dance checkers, disk-jockey, bouncers/door staff and/or other employees as part of Defendants' tip-sharing policy. Dancers are also required to help sell goods (such as t-shirts, videos or hats) bearing the Déjà Vu logo to patrons as part of their job duties performing table dances. As part of these "special" dances, goods are sold as a package with a table dance. The foregoing establishes that Defendants control and set the terms and conditions of all dancers' work. This is the hallmark of economic dependence and control.

**B.    Skill and Initiative of a Person in Business for Themselves**

69.    Plaintiffs, like all other dancers, do not exercise the skill and initiative of a person in business for themselves.

70.    Plaintiffs, like all other dancers, are not required to have any specialized or unusual skills to work at the Déjà Vu Affiliated Nightclubs. Prior dance experience is not required to perform at the Déjà Vu Affiliated Nightclubs. Dancers are not required to attain a certain level of skill in order to work at the Déjà vu Affiliated Nightclubs. There are no dance seminars, no specialized training, no instruction booklets, and no choreography provided or required in order to work at any of the Déjà Vu Affiliated Nightclubs. The dance skills utilized are commensurate with those exercised by ordinary people who choose to dance at a disco or at a wedding.

71.    Plaintiffs, like all other dancers, do not have the opportunity to exercise the business skills and initiative necessary to elevate their status to that of independent contractors. Dancers, like Plaintiffs, own no enterprise. Dancers, like Plaintiffs, exercise no business management skills. Dancers maintain no separate business structures or facilities. Dancers exercise no control over customer volume or atmosphere at the Déjà Vu Affiliated Nightclubs. Dancers do not actively participate in any effort to increase the nightclub's client base, enhance goodwill, or establish contracting possibilities. The scope of a dancer's initiative is restricted to decisions involving what clothes to wear (within Defendants' guidelines) or how provocatively to dance which is consistent with the status of an employee opposed to an independent contractor.

72.     Plaintiffs, like all other dancers, are not permitted to hire or subcontract other qualified individuals to provide additional dances to patrons, and increase their revenues, as an independent contractor in business for themselves would.

**C.      Relative Investment**

73.     Plaintiffs' relative investment is minor when compared to the investment made by Defendants.

74.     Plaintiffs, like all other dancers, make no capital investment in the facilities, advertising, maintenance, sound system and lights, food, beverage and other inventory, or staffing of the Déjà Vu Affiliated Nightclubs. Defendants provide all investment and risk capital. Dancers' investments are limited to expenditures on costumes and make-up which they may choose to wear while working, and their own labor. But for Defendants' provision of the lavish nightclub work environment the dancers would earn nothing.

**D.      Opportunity for Profit and Loss**

75.     Defendants, not dancers like Plaintiffs, manage all aspects of the business operation including attracting investors, establishing the hours of operation, setting the atmosphere, coordinating advertising, hiring and controlling the staff (managers, waitresses, bartenders, bouncers/doormen, etc.). Defendants, not the dancers, take the true business risks for the Déjà Vu Affiliated Nightclubs. Defendants, not the dancers, are responsible for providing the capital necessary to open, operate and expand the nightclub business.

76.     Dancers like Plaintiffs do not control the key determinants of profit and loss of a successful enterprise. Specifically, Plaintiffs are not responsible for any aspect of the enterprises' on-going business risk. For example, Defendants, not the dancers, are responsible for all financing, the acquisition and/or lease of the physical facilities and equipment, inventory, the payment of wages (for managers, bartenders, doormen, and waitresses), and obtaining all appropriate business' insurance and licenses. Defendants, not the dancers, establish the minimum dance tip amounts that should be collected from patrons when dancing. Even with respect to any "rent" payments, the dancers do not truly pay the Club's "rent" for the exclusive use of space. Rather, the term "rent" is a misnomer or subterfuge for tip sharing as in reality, Defendants simply demand a set portion

(approx. 35%) of each dance tip given to a dancer.

77.    The extent of the risk that dancers like Plaintiffs are confronted with is the loss of any "base rent" fee due to Defendants when the employee clocks out after each shift. Defendants, not the dancers, shoulder the risk of loss. The dance tips the dancers receive are not a return for risk on capital investment. They are a gratitude for services rendered. From this perspective, it is clear that a dancer's "return on investment" (i.e. dance tips) is no different from that of a waiter who serves food during a customer's meal at a restaurant.

**E.     Permanency**

78.    Certain dancers in the Class have worked at the Déjà Vu Affiliated Nightclubs for significant periods of time.

**F.     Integral Part of Employer's Business**

79.    Dancers like Plaintiffs are essential to the success of the Déjà vu Affiliated Nightclubs. The continued success of the Déjà Vu Affiliated Nightclubs depends to an appreciable degree upon the provision of exotic dances by dancers for patrons. In fact, the primary reason the nightclubs exist is to showcase the dancers' physical attributes for patrons. The primary "product" or "good" Defendants are in business to sell patrons that come to their nightclubs are lap dances performed by the exotic dancers in the Class that Defendants recruit to work in their clubs and instruct to work in a specific way.

80.    Many of the Déjà Vu Affiliated Nightclubs do not serve alcohol and therefore, are not truly in direct competition with other enterprises in the nightclub, tavern, or bar business. Absent the provision of exotic dances by dancers for patrons, a nightclub serving only non-alcoholic beverages would have difficulty remaining in business. Moreover, Defendants are able to charge admission prices and a much higher price for their drinks (e.g., $10 for soft drinks) than establishments without exotic dancers because the dancers are the main attraction of the Déjà Vu Affiliated Nightclubs. Moreover, dancers in the Class must help sell Defendants' drink products to patrons. As a result, the dancers are an integral part of the Déjà vu Affiliated Nightclubs' business.

81.    The foregoing demonstrates that dancers in the Class like Plaintiffs are economically dependent on Defendants and subject to significant control by Defendants. Therefore, Plaintiffs were

- 19 -

1   misclassified as independent contractors and should have been paid minimum wages at all times they

2   worked at any Déjà vu Affiliated Nightclub and otherwise been afforded all rights and benefits of an

3   employee under federal and state wage and hour laws.

4                                    **IV.    DEFENDANTS' INTENT**

5           82.    All actions and agreements by Defendants described herein were willful, intentional,

6   and not the result of mistake or inadvertence.

7           83.    Defendants were aware that the FLSA and state wage and hour laws applied to their

8   operation of the Déjà Vu Affiliated Nightclubs at all relevant times and that under the economic

9   realities test applicable to determining employment status under those laws the dancers were

10  misclassified as independent contractors. Defendants and their affiliated companies, were aware of

11  and/or the subject of previous litigation and enforcement actions relating to wage and hour law

12  violations where the misclassification of exotic dancers as independent contractors was challenged.

13  In the vast majority of those prior cases, exotic dancers working under conditions similar to those

14  employed at the Déjà Vu Affiliated Nightclubs were determined to be employees under the wage

15  and hour laws, not independent contractors. *See e.g., Harrell v. Diamond A Entm't, Inc.*, 992 F.

16  Supp. 1343 (M.D. Fla. 1997). Further, Defendants were aware, and on actual or constructive notice,

17  that applicable law rendered all dance tips given to class members by patrons when working in the

18  Déjà Vu Affiliated Nightclubs the dancer/Class member's sole property, rendering Defendants' tip-

19  share, rent, and tip-out polices unlawful. Despite being on notice of their violations, Defendants

20  intentionally chose to continue to misclassify dancers like Plaintiffs, withhold payment of minimum

21  wages, and require dancers to share their tips with Defendants and their employees in an effort to

22  enhance their profits. Such conduct and agreements were intentional, unlawful, fraudulent,

23  deceptive, unfair and contrary to public policy.

24                                    **V.    INJURY AND DAMAGE**

25          84.    Plaintiffs and all Class members suffered injury, were harmed, and incurred damage

26  and financial loss as a result of Defendants' conduct complained of herein. Among other things,

27  Plaintiffs and the Class were entitled to minimum wages and to retain all of the dance tips and other

28  tips they were given by patrons. By failing to pay Plaintiffs and the Class minimum wages and

1    interfering with their right to retain all of the dance tips and other tips they were given by patrons,

2    Defendants injured Plaintiffs and the members of the Class and caused them financial loss, harm,

3    injury, and damage. Defendants' conduct causing those injuries was committed in California,

4    emanated to, and affected Class members across the state and nationwide.

5              **VI.    <u>COLLECTIVE AND CLASS ACTION ALLEGATIONS</u>**

6         85.    Plaintiffs bring the First Cause of Action (for violations of the FLSA) as an "opt-in"

7    collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b) on behalf of themselves

8    and a proposed collection of similarly situated individuals defined as follows, and hereinafter

9    referred to as the "FLSA Collective":

10        All individuals who have worked in California for Defendant(s) as an exotic dancer at
          any time on or after the date three years before the filing of this action.

11        86.    The names and addresses of the individuals who comprise the FLSA Collective are

12   available from Defendants. Accordingly, Plaintiffs herein pray for an Order requiring Defendants to

13   provide the names and all available locating information for all members of the FLSA Collective, so

14   that notice can be provided regarding the pendency of this action, and of such individuals' right to

15   opt-in to this action as party plaintiffs.

16        87.    Plaintiffs bring the Second through Eighth Causes of Action (the California state law

17   claims) as an "opt-out" class action pursuant to California Code of Civil § 382, defined initially as

18   follows, and hereinafter referred to as the "California Class":

19
20        All individuals who have worked in California for Defendant(s) as an exotic dancer at
          any time on or after the date four years before the filing of this action.

21   Excluded from the California Class is anyone employed by counsel for Plaintiffs in this action, and

22   any Judge to whom this action is assigned and his or her immediate family members.

23        88.    <u>Numerosity</u>. Defendants have employed hundreds of individuals as exotic dancers

24   during the relevant time periods.

25        89.    <u>Existence and Predominance of Common Questions</u>. Common questions of law

26   and/or fact exist as to the members of the proposed classes and, in addition, common questions of

27   law and/or fact predominate over questions affecting only individual members of the proposed

28   classes. The common questions include the following:

a.    Whether Defendants' policy and practice of not paying exotic dancers the minimum wage and/or at one-and-a-half (1.5) times the regular rate of pay (*i.e.*, time-and-a-half) for all hours worked in excess of forty hours in a week or eight hours in a day violates the FLSA and/or California labor laws;

b.    Whether Defendants violated the FLSA and/or California wage and hour laws by classifying all exotic dancers at the Déjà Vu  Affiliated Nightclubs as "independent contractors," as opposed to employees, and not paying them overtime and minimum wages;

c.    Whether the monies given to dancers by patrons when they perform table dances are gratuities;

d.    Whether the dancers own the money given to them by patrons when they perform exotic dances;

e.    Whether Defendants unlawfully required Class members to share their tips with Defendants and Defendants' employees;

f.    Whether Defendants are joint employers of the dancers in the Class;

g.    Whether Defendants and certain third parties agreed and conspired to deny Class members their rights under federal and state wage and hour laws;

h.    Whether Defendants failed to keep required employment records;

i.    Whether Defendants' payroll policies and practices violated the California Labor Code and/or the Unfair Competition Law ("UCL");

j.    Whether the Class members are entitled to unpaid wages, waiting time penalties, and other relief;

k.    Whether Defendants' affirmative defenses, if any, raise common issues of fact or law as to Plaintiffs and the Class members; and

l.    Whether Plaintiffs and the proposed classes are entitled to damages and equitable relief, including, but not limited to, restitution and a preliminary and/or permanent injunction, and if so, the proper measure and formulation of such relief.

90.    <u>Typicality</u>. Plaintiffs' claims are typical of the claims of the proposed classes. Defendants' common course of conduct in violation of law as alleged herein has caused Plaintiffs and the proposed classes to sustain the same or similar injuries and damages. Plaintiffs' claims are therefore representative of and co-extensive with the claims of the proposed classes.

91.    <u>Adequacy</u>. Plaintiffs are adequate representatives of the proposed classes because their interests do not conflict with the interests of the members of the classes they seek to represent. Plaintiffs have retained counsel competent and experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously. Plaintiffs and their counsel will fairly and

adequately protect the interests of members of the proposed classes.

92.    <u>Superiority</u>. The class action is superior to other available means for the fair and efficient adjudication of this dispute. The injury suffered by each member of the proposed classes, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Defendants economically feasible. Individualized litigation increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

93.    In the alternative, the proposed classes may be certified because the prosecution of separate actions by the individual members of the proposed classes would create a risk of inconsistent or varying adjudication with respect to individual members of the proposed classes that would establish incompatible standards of conduct for Defendants; and Defendants have acted and/or refused to act on grounds generally applicable to the proposed classes, thereby making appropriate final and injunctive relief with respect to members of the proposed classes as a whole.

**FIRST CAUSE OF ACTION**
**VIOLATION OF THE FLSA**
**(Failure to Pay Statutory Minimum Wages and Overtime)**
**(By the FLSA Collective)**

94.    Plaintiffs hereby incorporate all of the preceding paragraphs by reference as if fully set forth herein, unless inconsistent.

95.    At all relevant times, Defendants jointly employed Plaintiffs and all Class members within the meaning of the FLSA.

96.    29 U.S.C. § 206 requires that Defendants pay all employees minimum wages for all hours worked. 29 U.S.C. § 206(a) provides in pertinent part:

Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates:

(1) except as otherwise provided in this section, not less than--

(A) $5.85 an hour, beginning on the 60th day after May 25, 2007;

(B) $6.55 an hour, beginning 12 months after that 60th day; and

(C) $7.25 an hour, beginning 24 months after that 60th day;

97.    29 U.S.C. § 207 requires that Defendants pay all employees overtime wages for all overtime hours worked. 29 U.S.C. § 207(a) provides in pertinent part:

> ... no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate of not less than one and one-half times the regular rate at which he is employed.

98.    Like other dancers working at the Déjà Vu Affiliated Nightclubs, Defendants failed to pay Plaintiffs the minimum and overtime wages set forth in 29 U.S.C. §§ 206-207, or any wages whatsoever. In fact, Defendants required that dancers like Plaintiffs actually pay them in order to work.

99.    Defendants failed to pay dancers like Plaintiffs a minimum or overtime wage throughout the relevant time period because Defendants misclassified them as independent contractors.

100.    The amounts paid to exotic dancers, like Plaintiffs, by patrons in relation to dances performed were tips, not wages. Those monies were not the property of Defendants. The entire amount collected from patrons in relation to dances performed by exotic dancers was not made part of any of Defendants' gross receipts at any point.

101.    As a result, the amounts paid to dancers like Plaintiffs by patrons in relation to exotic dances were tips, not wages or service fees, and no part of those amounts can be used to offset Defendants' obligation to pay dancers, like Plaintiff, minimum wages due. *See e.g., Hart v. Rick's Cabaret Int'l, Inc.,* 967 F. Supp. 2d 901, 934 (S.D.N.Y. 2013) (granting summary judgment to exotic dancers on the issue of whether dance fees offset a nightclub's wage obligations under the FLSA).

102.    Further, no tip credit applies to reduce or offset any minimum wages due. The FLSA only permits an employer to allocate an employee's tips to satisfy a portion of the statutory minimum wage requirement provided that the following conditions are satisfied: (1) the employer must inform the tipped employees of the provisions of § 3(m) of the FLSA, 29 U.S.C. § 203(m); and (2) tipped

1  employees must retain *all the tips* received except those tips included in a tipping pool among
2  employees who customarily receive tips. 29 U.S.C. § 203(m).

3      103.   Neither of these conditions was satisfied. Defendants did not inform dancers like
4  Plaintiffs of the provisions of § 3(m) of the FLSA, 29 U.S.C. § 203(m); and Plaintiffs did not retain
5  all the tips received except those tips included in a tipping pool among employees who customarily
6  receive tips. 29 U.S.C. § 203(m). Defendants never notified any dancers that their dance tips were
7  being used to reduce the minimum wages otherwise due under FLSA's tip-credit provisions and that
8  they were still due the reduced minimum wage for tipped employees. Rather, Defendants maintained
9  that no dancers were ever due any minimum wages due to their classification as independent
10  contractors and were paid none.

11      104.   Further, Defendants' requirement that dancers like Plaintiffs share their tips and: (i)
12  pay Defendants a portion of all dance tips as "rent"; and (ii) also pay a percentage of their tips as
13  "tip-outs" to other employees who do not customarily receive tips, such as managers, checkers, DJs
14  and bouncers/doormen/floor walkers, was not part of a valid tip-sharing arrangement.

15      105.   Based on the foregoing, Plaintiffs are entitled to the full statutory minimum wages set
16  forth in 29 U.S.C. §§ 206 and 207 for all periods in which they worked at the Déjà Vu Affiliated
17  Nightclubs, along with all applicable penalties, liquidated damages, and other relief.

18      106.   Defendants' conduct in misclassifying dancers like Plaintiffs as independent
19  contractors was intentional, willful, and done to avoid paying minimum and overtime wages and the
20  other benefits that they were legally entitled to.

21      107.   The FLSA provides that a private civil action may be brought for the payment of
22  federal minimum and overtime wages and for an equal amount in liquidated damages in any court of
23  competent jurisdiction by an employee pursuant to 29 U.S.C. § 216(b) ("Any employer who violates
24  the provisions of section 206 or section 207 of this title shall be liable to the employee or employees
25  affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as
26  the case may be, and in an additional equal amount as liquidated damages."). Moreover, Plaintiffs
27  may recover attorneys' fees and costs incurred in enforcing their rights pursuant to 29 U.S.C. §
28  216(b).

108.    12 U.S.C. § 21 l(c) provides in pertinent part:

(c) Records

Every employer subject to any provision of this chapter or of any order issued under this chapter shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, and shall make such reports therefrom to the Administrator as he shall prescribe by regulation or order as necessary or appropriate for the enforcement of the provisions of this chapter or the regulations or orders thereunder.

109.    29 C.F.R.§ 516.2 and 29 C.F.R. § 825.500 further require that every employer shall maintain and preserve payroll or other records containing, without limitation, the total hours worked by each employee each workday and total hours worked by each employee each workweek.

110.    To the extent Defendants failed to maintain all records required by the aforementioned statutes and regulations, and failed to furnish Plaintiffs comprehensive statements showing the hours that they worked during the relevant time period, it also violated the aforementioned laws causing Plaintiffs damage.

111.    When the employer fails to keep accurate records of the hours worked by its employees, the rule in *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687-688 (1946) is controlling. That rule states:

...where the employer's records are inaccurate or inadequate ... an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

112.    The Supreme Court set forth this test to avoid placing a premium on an employer's failure to keep proper records in conformity with its statutory duty, thereby allowing the employer to reap the benefits of the employees' labors without proper compensation as required by the FLSA. Where damages are awarded pursuant to this test, "[t]he employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with ... the Act." *Id*.

113.    Based on the foregoing, Plaintiffs seek unpaid minimum wages at the required legal

rate for all working hours during the relevant time period, back pay, restitution, damages, reimbursement of any base rent and tip-sharing, liquidated damages, prejudgment interest calculated at the highest legal rate, attorneys' fees and costs, and all other costs, penalties, and other relief allowed by law.

### SECOND CAUSE OF ACTION
**Violation of Calif. Labor Code §§ 1194, 1197, 1198, and 1199**
**Failure to Pay Minimum Wage as Required by State Law**
**(By the California Class)**

114.    Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

115.    Defendants' conduct, as set forth above, in failing to pay their dancers minimum wage for all hours worked as required by California law, violates Cal. Lab. Code §§ 1197 and 1194.

116.    California Labor Code § 1194(a) provides for a private right of action for nonpayment of wages, and further provides that a plaintiff may recover the unpaid balance of the full amount of such wages, together with costs of suit, as well as liquidated damages, interest thereon, and the attorneys' fees and costs incurred. California Labor Code § 1194.5 further grants courts the authority to enjoin violations of this statute.

117.    At all relevant times, Defendants have willfully failed to pay Plaintiffs and class members any wages whatsoever. Defendants have required that Plaintiffs and Class members actually pay Defendants in order to be able to work at Déjà Vu Affiliated Nightclubs.

118.    Therefore, Plaintiffs seek, on behalf of themselves and all others similarly situated, unpaid wages at the required legal rate, reimbursement of stage fees, liquidated damages, interest, attorneys' fees and costs, and all other costs and penalties allowed by law. Plaintiffs further seek injunctive relief to compel Defendants to recognize exotic dancers' employee status, to provide all payment guaranteed by law, and for this Court's continuing jurisdiction to enforce compliance.

### THIRD CAUSE OF ACTION
**Violation of Calif. Labor Code §§ 1194, 1198, 510, and 558**
**Failure to Pay Overtime as Required by State Law**
**(By the California Class)**

119.    Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

120.    At all times relevant to the Complaint, Wage Order No. 4 has required the payment of an overtime premium for hours worked in excess of 8 hours in a workday, 40 hours in a workweek,

- 27 -

1    or on the seventh day worked in a single workweek.

2        121.    During the relevant time period, Plaintiffs and the class members were employed by

3    Defendants within California but were not paid overtime wages for overtime hours worked.

4        122.    Plaintiffs request that Defendants be required to pay them, and all those similarly

5    situated, all overtime wages illegally withheld, penalties as provided under the California Labor

6    Code including §§ 201-203, 510 and 1194.1(a) *et seq.*, punitive/exemplary damages, and attorneys'

7    fees and costs under California Labor Code § 218.5 and 1194(a).

**FOURTH CAUSE OF ACTION**
**Violation of Calif. Labor Code § 226 and IWC Wage Order 4-2001**
**Failure to Provide Itemized Wage Statements in Violation of Cal. Labor Code**
**(By the California Class)**

10       123.    Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

11       124.    Defendants have failed, and continue to fail, to provide timely, accurate itemized

12   wage statements to Plaintiffs and California Class members in accordance with California Labor

13   Code § 226 and Wage Order No. 4. The wage statements that Defendants have provided to their

14   exotic dancers, including Plaintiffs and the proposed California Class members, do not accurately

15   reflect the actual hours worked and wages earned.

16       125.    Defendants' failure to provide timely, accurate, itemized wage statements to Plaintiffs

17   and members of the proposed California Class in accordance with the California Labor Code and the

18   California Wage Order has been knowing and intentional. Accordingly, Defendants are liable for

19   damages and penalties under California Labor Code § 226.

**FIFTH CAUSE OF ACTION**
**Violation of Calif. Labor Code §§ 201-203**
**Waiting Time Penalties**
**(By the California Class)**

23       126.    Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

24       127.    California Labor Code § 201(a) requires an employer who discharges an employee to

25   pay compensation due and owing to said employee upon discharge. California Labor Code § 202(a)

26   requires an employer to pay compensation due and owing within seventy-two (72) hours of an

27   employee's termination of employment by resignation. California Labor Code § 203 provides that if

28   an employer willfully fails to pay compensation promptly upon discharge or resignation, as required

- 28 -
COMPLAINT

1    under §§ 201 and 202, then the employer is liable for waiting time penalties in the form of continued

2    compensation for up to thirty (30) work days.

3        128.    Certain members of the proposed California Class are no longer employed by

4    Defendants but have not been paid full compensation for all hours worked, as alleged above. They

5    are entitled to unpaid compensation for all hours worked, and overtime, for which to date they have

6    not received compensation, and any applicable overtime.

7        129.    Defendants have failed and refused, and continue to willfully fail and refuse, to

8    timely pay compensation and wages and compensation to Plaintiffs and members of the proposed

9    California Class whose employment with Defendants have terminated, as required by California

10   Labor Code §§ 201 and 202. As a direct and proximate result, Defendants are liable to all such

11   California Class members for up to thirty (30) days of waiting time penalties pursuant to California

12   Labor Code § 203, together with interest thereon.

13       130.    WHEREFORE, pursuant to Labor Code §§ 218, 218.5, and 218.6, Plaintiffs and

14   Class members are entitled to recover the full amount of their unpaid wages, continuation wages

15   under § 203, interest thereon, reasonable attorneys' fees, and costs of suit.

16

17                          **SIXTH CAUSE OF ACTION**
                        **Violation of Calif. Labor Code § 204**
18                  **Failure to Pay all Wages Owed Every Pay Period**
                            **(By the California Class)**

19       131.    Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

20       132.    During the relevant time period, Plaintiffs and Class members have been employees

21   of Defendants covered by Labor Code § 204 but have been misclassified and not treated as

22   employees.

23       133.    Pursuant to Labor Code § 204, Plaintiffs and Class members were entitled to receive

24   on regular paydays all wages earned for the pay period corresponding to the payday.

25       134.    Defendants have failed to pay Plaintiffs and Class members all wages earned each

26   pay period. On information and belief, at all times during the proposed class period, Defendants have

27   maintained a policy or practice of not paying Plaintiffs and Class members minimum wages for all

28   hours worked and overtime wages for all overtime hours worked.

135.    As a result of Defendants' unlawful conduct, Plaintiffs and Class members have suffered damages in an amount, subject to proof, to the extent they were not paid all wages and/or compensation and/or penalties each pay period. The precise amounts of unpaid wages, compensation, and/or penalties are not presently known to Plaintiffs but can be determined directly from Defendants' records or indirectly based on information from Defendants' records and/or information known by class members.

136.    WHEREFORE, pursuant to Labor Code §§ 218, 218.5 and 218.6, Plaintiffs and class members are entitled to recover the full amount of their unpaid wages, interest thereon, reasonable attorneys' fees, and costs of suit.

**SEVENTH CAUSE OF ACTION**
**Common Law Conversion**
**(By the California Class)**

137.    Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

138.    Defendants' failure to give class members gratuities from customers that were given and/or left for class members, as alleged above, constitutes common law conversion.

139.    Defendants have assumed control and ownership over the above-referenced gratuities, and applied them to its own use.

140.    Plaintiffs and class members had a right of ownership and possession over the above-referenced gratuities.

141.    Defendants' theft and retention of the above-referenced gratuities, without consent, have caused Plaintiffs and class members significant financial harm.

142.    In failing to pay said monies to Plaintiffs and class members and retaining that money for its own use, Defendants have acted with malice, oppression, and/or conscious disregard for the statutory rights of Plaintiffs and class members. Such wrongful and intentional acts, given the number of victims and the number of acts and previous claims and/or lawsuits relative to similar acts, justify awarding Plaintiffs and class members punitive damages pursuant to California Civil Code § 3294 *et seq.* in an amount sufficient to deter future similar conduct by Defendants.

//

//

**EIGHTH CAUSE OF ACTION**
**Violation of California's Unfair Competition Law, Bus. & Prof. Code §§ 17200 *et seq*.**
**(By the California Class)**

143.    Plaintiffs incorporate the allegations of all the foregoing paragraphs by reference, as if fully set forth herein.

144.    Plaintiffs bring this action individually, on behalf of the Class, and on behalf of the general public pursuant to § 17200 *et seq.* of the California Business and Professions Code (the "Cal. Bus. & Prof. Code"), and the Unfair Competition Laws ("UCL").

145.    California Business and Professions Code § 17204 prohibits unfair competition, defined as "any unlawful, unfair or fraudulent business act or practice." On behalf of the Class, Plaintiffs seek compensation for the loss of their property and the personal financial impacts they have suffered as a result of Defendants' unfair business practices. Defendants' conduct, as described above, has been and continues to be deleterious to the Class, and Plaintiffs are seeking to enforce important rights affecting the public interest within the meaning of California Code of Civil Procedure § 1021.5.

146.    The conduct of Defendants, as described above, constitutes unlawful, unfair, unconscionable and/or fraudulent business acts or practices which injured the Class members and caused them loss of money.

147.    The unlawful, unfair, unconscionable and/or fraudulent business acts or practices adopted by Defendants, which injured the Class members and caused them loss of money, were conducted by DVS and Mohney in material part in the state of California and emanated to their business operations in California. Class members, therefore, were harmed and injured as a result of DVS's and Mohney's conduct in California. As such, the UCL applies to the entire Class.

148.    Defendants adopted unlawful business and employment policies, entered into agreements and conspired amongst themselves (and with certain third parties in the enterprise who own part of other Déjà Vu Affiliated Nightclubs) to engage in the above-described unlawful, unfair, unconscionable and/or fraudulent business acts and practices in California and that conduct harmed Class members and caused them injury and financial loss. As such, the UCL applies to all such transactions and dealings. All members of the Class have standing to assert UCL claims against DVS

1    and Mohney.

2    149.    By failing to pay its employees minimum and overtime wages in violation of the

3    FLSA and California wage and hour laws, Defendants violated the UCL.

4    150.    Violations of the FLSA are unlawful acts which are independently actionable under

5    the UCL. *Wang v. Chinese Daily News* (9th Cir. 08-56740 9/27 /1 O); *In re Wells Fargo Home*

6    *Mortgage Litig.,* 527 F.Supp.2d 1053, 1066-69 (N.D. Cal. 2007). Such cases are certifiable as class

7    actions under Fed. R. Civ. P. 23 where the unlawful, unfair, unconscionable and/or fraudulent

8    business acts or practices, which injured the Class, were conducted by DVS and Mohney in material

9    part in the state of California and emanated to their business operations in this state.

10   151.    Unpaid wages constitute restitution of property earned by the employee.

11   152.    By requiring Class members to share their tips (e.g., dance tips) with Defendants

12   and/or their employees (tip-outs) in violation of the FLSA and/or any other state or federal law or

13   regulation, as described above, Defendants engaged in unlawful, unfair, unconscionable and/or

14   fraudulent business acts or practices in violation of the UCL.

15   153.    By attempting to have Class members waive, abridge or limit their rights under the

16   FLSA and/or other applicable wage and hour laws in order to work as exotic dancers at the Déjà Vu

17   Affiliated Nightclubs, Defendants engaged in unlawful, unfair, unconscionable and/or fraudulent

18   business acts or practices in violation of the UCL.

19   154.    By threatening to retaliate against and penalize Class members for asserting their

20   rights under the FLSA and/or other applicable wage and hour laws (such as by terminating them,

21   confiscating their tips, and/or imposing other penalties and discrimination), Defendants engaged in

22   unlawful, unfair, unconscionable and/or fraudulent business acts or practices in violation of the

23   UCL.

24   155.    By failing to maintain employment records under the FLSA and/or other applicable

25   wage and hour laws, Defendants engaged in unlawful, unfair, unconscionable and/or fraudulent

26   business acts or practices in violation of the UCL.

27   156.    The acts complained of herein, and each of them, constitute unfair, unlawful,

28   unconscionable and/or fraudulent business practices in violation of Cal. Bus. & Prof. Code § 17200

*et seq.* Defendants' acts and practices described herein offend established public policies including, but not limited to, those set forth in the FLSA and/or other applicable wage and hour laws (including Cal. Labor Code § 356), and involve business practices that are immoral, unethical, oppressive, and/or unscrupulous.

157.   The unfair business practices set forth above have and continue to injure the Class and the general public and cause injury and the loss of money, as described further within. These violations have unjustly enriched Defendants at the expense of the Class. As a result, Plaintiffs, the Class and the general public are entitled to restitution and an injunction.

158.   Defendants' conduct, as set forth above, violates the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* Defendants' conduct constitutes unlawful business acts or practices, in that Defendants have violated California Labor Codes §§ 210, 226, 1194, 1197, and 2802, among other laws. As a result of Defendants' unlawful conduct, Plaintiffs and class members suffered injury in fact and lost money and property, including, but not limited to unpaid wages, unpaid minimum wages, and business expenses that dancers were required to pay. Pursuant to California Business and Professions Code § 17203, Plaintiffs and class members seek to recover restitution. Pursuant to California Code of Civil Procedure § 1021.5, Plaintiffs and class members who worked for Defendants in California are entitled to recover reasonable attorneys' fees, costs, and expenses incurred in bringing this action.

159.   Defendants' conduct, as set forth above, in failing to permit dancers to retain all gratuities, including dance fees paid by customers, constitutes a violation of California Labor Code § 351. This violation is enforceable pursuant to the UCL, Cal. Bus. & Prof. Code § 17200 *et seq.* Defendants' conduct constitutes unlawful, unfair, or fraudulent acts or practices, in that Defendants have violated California Labor Code § 351 in not permitting dancers to retain all gratuities, including dance fees, paid by customers. As a result of Defendants' conduct, Plaintiffs and class members suffered injury in fact and lost money and property, including the loss of gratuities to which they were entitled. Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiffs and class members seek declaratory and injunctive relief for Defendants' unlawful, unfair, and fraudulent conduct and to recover restitution.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief as follows:

a)      For an order certifying that the First Cause of Action of this Complaint may be maintained as a collective action pursuant to 29 U.S.C. § 216(b) and requiring that Defendants identify all members of the FLSA Collective and provide all locating information for members of the FLSA Collective, and that notice be provided to all members of the FLSA Collective apprising them of the pendency of this action and the opportunity to file Consents to Become Party Plaintiff thereto;

b)       For an order certifying that the Second through Eight Causes of Action of this Complaint may be maintained as a class action pursuant to California Code of Civil Procedure § 382 on behalf of the classes as defined herein and that notice of the pendency of this action be provided to members of the proposed classes;

c)      For an order designating Plaintiffs as class representatives for both the FLSA and California state law claims and Plaintiffs' attorneys as counsel for the FLSA Collective and the proposed classes;

d)      For an order awarding Plaintiffs, the FLSA Collective, and the proposed classes compensatory damages and statutory damages (including liquidated damages on the FLSA claims), including unpaid wages, overtime compensation, and all other sums of money owed, together with interest on these amounts;

e)      For preliminary, permanent, and mandatory injunctive relief prohibiting Defendants and its officers and agents from committing the violations of law herein alleged in the future;

f)      For a declaratory judgment that Defendants have violated the FLSA, California labor law, and public policy as alleged herein;

g)      For an order imposing all statutory and/or civil penalties provided by law, including without limitation penalties under the California Labor Code;

h)      For exemplary and punitive damages, as appropriate and available under each cause of action, pursuant to California Civil Code § 3294;

i)      For all unpaid minimum and overtime wages due to Plaintiffs and each class member;

j)      For an order enjoining Defendants from further unfair and unlawful business practices in violation of the UCL;

k)      Disgorgement of profits;

l)      For an order awarding restitution of the unpaid minimum, regular, overtime, and premium wages due to Plaintiffs and class members;

m)      For pre- and post-judgment interest;

n)      For an award of reasonable attorneys' fees as provided by the FLSA, California Labor Code §§ 226(e) and 1194; California Code of Civil Procedure § 1021.5; and/or other applicable law;

o)      For all costs of suit; and

p)      For such other and further relief as the Court deems just and proper.

### JURY TRIAL DEMAND

Plaintiffs demand a trial by jury for all of the claims asserted in this Complaint so triable.

DATED: May 29, 2018                              Respectfully submitted,

FINKELSTEIN & KRINSK LLP

By: _____

Jeffrey R. Krinsk, Esq.
Joshua C. Anaya, Esq.
Trenton R. Kashima, Esq.
550 West C St., Suite 1760
San Diego, CA 92101-3593
Telephone:  (619) 238-1333
Facsimile:  (619) 238-5425

Attorneys for Plaintiffs
and the Putative Classes

- 35 -
COMPLAINT