# EXHIBIT 11

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego

**10/18/2018** at 03:03:00 PM

Clerk of the Superior Court
By Richard Day, Deputy Clerk

Tammara N. Bokmuller, Esq., SBN 192200
**CLARK HILL LLP**
One America Plaza
600 West Broadway, Suite 500
San Diego, CA 92101
Telephone: (619) 557-0404
Facsimile: (619) 557-0460
TBokmuller@ClarkHill.com

Attorneys for Defendants Attorneys for Defendants Déjà Vu Services, Inc., Harry Mohney, Grapevine Entertainment, Inc. d/b/a Déjà Vu Showgirls; Nite Life East, LLC d/b/a Little Darlings; SP Star Enterprise, Inc. d/b/a Déjà Vu; Coldwater, LLC d/b/a Deja Vu Showgirls; 3610 Barnett Ave., LLC d/b/a Adult Superstore; Jolar Cinema of San Diego, Ltd. d/b/a Jolar Cinema Showgirls; Showgirls of San Diego, Inc. d/b/a Deja Vu Showgirls; Bijou – Century, LLC d/b/a New Century Theatre; BT California, LLC d/b/a The Penthouse Club & Steakhouse; Chowderhouse, Inc., d/b/a Hungry I; Deja Vu – San Francisco, LLC d/b/a Centerfolds; Deja Vu Showgirls of San Francisco, LLC d/b/a Little Darlings of San Francisco; Gold Club – S.F., LLC d/b/a Gold Club; S.A.W. Entertainment, Ltd., d/b/a Hustler San Francisco and the Condor Club; San Francisco Garden of Eden, LLC d/b/a Garden of Eden; San Francisco Roaring 20's, LLC d/b/a Roaring 20's; and Stockton Enterprises, LLC d/b/a Deja Vu Showgirls

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN DIEGO

| | |
|---|---|
| Jane Roes, et al.,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Deja Vu Services, Inc., et al.,<br><br>　　　　　Defendant. | Case No. 37-2018-28044-CU-OE-CTL<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL ARBITRATION**<br><br>Assigned to: Hon. Timothy Taylor<br>Dept: C-72<br>Complaint Filed: July 6, 2018<br><br>Hearing date: January 18, 2019<br>Hearing time: 1:30 p.m. |

1

## I. INTRODUCTION

Roes 1 through 4 bring this putative class action alleging that Defendants'[1] business practice of classifying exotic dancers working at Deja Vu Affiliated Entities ("the Clubs") throughout California as independent contractors, as opposed to employees, is in violation of California law and the Fair Labor Standards Act ("the Action."). The parties hereto have already undertaken two mediations to resolve the Action and a Motion for Preliminary Approval of the settlement terms negotiated by the parties is pending before this court[2]. These complex negotiations were a culmination of months of work by the parties to not only settle the Action, but to also harmonize the settlement of the Action with two prior settlements involving the same Defendants, the same allegations, and encompassing a portion of the class period alleged in the Action[3].

Despite the pending settlement, Defendants seek to avoid a waiver of their right to enforce the arbitration provisions and class action waivers agreed to by Roes 1 through 4 in the unlikely event the settlement of the Action is not approved by the court.

This motion addresses the arbitration provision and class action waivers contained in the Performer Contracts entered into between Roes 1 through 4 and various named Defendants. As detailed herein, Plaintiffs were given the option of performing either as an employee or independent contractor at the Clubs owned by the moving Defendants. Plaintiffs voluntarily chose independent contractor status. Pursuant to the Performer Contracts they executed thereafter, Plaintiffs agreed to

---

[1] Moving Defendants currently consist of the following entities: Déjà Vu Services, Inc., Harry Mohney, Grapevine Entertainment, Inc. d/b/a Déjà Vu Showgirls; Nite Life East, LLC d/b/a Little Darlings; SP Star Enterprise, Inc. d/b/a Déjà Vu; Coldwater, LLC d/b/a Deja Vu Showgirls; 3610 Barnett Ave., LLC d/b/a Adult Superstore; Jolar Cinema of San Diego, Ltd. d/b/a Jolar Cinema Showgirls; Showgirls of San Diego, Inc. d/b/a Deja Vu Showgirls; Bijou – Century, LLC d/b/a New Century Theatre; BT California, LLC d/b/a The Penthouse Club & Steakhouse; Chowderhouse, Inc., d/b/a Hungry I; Deja Vu – San Francisco, LLC d/b/a Centerfolds; Deja Vu Showgirls of San Francisco, LLC d/b/a Little Darlings of San Francisco; Gold Club – S.F., LLC d/b/a Gold Club; S.A.W. Entertainment, Ltd., d/b/a Hustler San Francisco and the Condor Club; San Francisco Garden of Eden, LLC d/b/a Garden of Eden; San Francisco Roaring 20's, LLC d/b/a Roaring 20's; and Stockton Enterprises, LLC d/b/a Deja Vu Showgirls

[2] The hearing on the Motion for Preliminary Approval is set for November 2, 2018.

[3] The two other cases with pending settlements are *Does 1-2 v. Déjà Vu Services, Inc., et al.*, (E.D. Mich. Case No. 2:16-cv-10877) now pending in the Sixth Circuit Court of Appeals (Case No. 17-18001); and *Roes 1-2 v. SFBSC Management, LLC, et al.*, (N.D. Cal. Case No. 3:14-cv-3616-LB), now pending in the Ninth Circuit Court of Appeals (Case No. 17-17079)

---

2
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL ARBITRATION
220363199

submit "all disputes" between themselves and the moving Defendants to individual arbitration pursuant to the Federal Arbitration Act (FAA).

Plaintiffs Performer Contracts also contained class-action waivers and the moving Defendants likewise seek to enforce those waivers. Pursuant to the recent United States Supreme Court decision in *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612 (2018) class action waivers such as those set forth within the Performer Contracts are enforceable under the FAA.

Plaintiffs Performer Contracts should be enforced, along with the arbitration provisions, and should the settlement of the Action not be approved, Plaintiffs should be ordered to submit their claims against the Defendants (to the extent not released by the other two settlements) to individual arbitrations.

## II. FACTS

### A. Plaintiffs' Background

Roes 1 through 4 have at one time or another been exotic entertainers at one or more of the Clubs. Specifically, each of the Roe Plaintiffs entered into written Performer Contracts as follows:

Roe 1[4] – Performed at Cathay Entertainment, Inc. - City of Industry - in 2015 and signed a Performer Contract agreeing to arbitrate her claims and to only litigate on her own behalf on January 16, 2015.

Roe 2 – Performed at Déjà vu Showgirls in Torrance in 2018 and signed a Performer Contract agreeing to arbitrate her claims and to only litigate on her own behalf on February 17, 2018.

Roe 3 – Performed at Déjà vu North Hollywood and SP Star in 2013 and signed Performer Contracts agreeing to arbitrate her claims and to only litigate on her own behalf on June 12, 2013 and November 23, 2013 respectively.

Roe 4 – Performed at Showgirls of San Diego, Inc. in 2018 and signed a Performer Contract agreeing to arbitrate her claims and to only litigate on her own behalf on February 3, 2018.

---

[4] Plaintiffs' counsel have represented that they will be withdrawing Roes 1 and 3 as class representatives; however, because these Roe plaintiffs remain parties to the action at this time Defendants include their Performer Contracts agreeing to arbitration and waiving class actions for the Court's consideration.

3
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL ARBITRATION
220363199

True and correct copies of these entertainer contracts are located at Exhibits 1 through 5 to the Declaration of Donald Krontz ("Krontz Dec.") submitted herewith.

In each instance, Plaintiffs voluntarily declined employee status, opting instead to perform at the Clubs as independent contractors. Additionally, each of the Plaintiff's Performer Contracts include a voluntary provision to arbitrate disputes. Each arbitration provision requires the appointment of a neutral arbitrator agreed upon by the parties and empowers the arbitrator to award any relief that the parties would be able to pursue in court. The arbitration provisions also enable the parties to enforce the arbitrator's award in any court having jurisdiction. Furthermore, each of the Performer Contracts include a class action waiver. Specifically, the arbitration provisions preclude the arbitrator from consolidating "more than one person's claims" or "presid[ing] over any form of representative or class proceeding." *(Id.)* In short, the arbitration provisions in each Performer Contract require the parties to arbitrate "all disputes" and to do so on an individual basis.

### B. Plaintiffs' Complaint

This action was filed in this court on May 31, 2018. This is the first appearance by the Defendants. Plaintiffs' complaint alleges eight causes of action for: (1) Violation of FLSA (failure to pay statutory minimum wage); (2) Violation of Calif. Labor Code §§ 1194, 1197, 1198, and 1199 (failure to pay minimum wage as required by state law); (3) Violation of Calif. Labor Code §§ 1194, 1998, 510, and 558 (failure to pay overtime as required by state law); (4) Violation of Calif. Labor Code § 226 and IWC Wage Order 4-2001 (Failure to provide itemized wage statements in violation of Cal. Labor Code); (5) Violation of Calif. Labor Code §§ 201-203 (waiting time penalties); (6) Violation of Calif. Labor Code § 204 (failure to pay all wages owed every pay period); (7) Common Law Conversion; and (8) California's Unfair Competition Law, Bus. & Prof. Code §§ 17200 *et seq.*[5] The causes of action are premised on Defendants' alleged willful misclassification of Plaintiff (and similarly situated entertainers) as independent contractors rather than employees.

---

[5] Plaintiffs intend to amend their complaint to add defendants and assert a PAGA cause of action. The proposed settlement encompasses those defendants and the PAGA claim.

## III. ARGUMENT

### A. Plaintiffs' Claims are Subject to Arbitration

"[P]arties to an arbitration agreement [may] expressly designate that any arbitration proceeding should move forward under the FAA's procedural provisions rather than under state procedural law." *Rodriguez v. American Technologies, Inc.,* 136 Cal.App.4th 1110, 1121 (2006). Here, the arbitration provisions in the Performer Contracts expressly call for application of the FAA and require each performer to resolve "all disputes" between herself and the Clubs through individual binding arbitration. (See Krontz Dec. Exhibit 2 at ¶ VIII (1).)

### B. Any Challenges to the Validity or Enforceability of the Arbitration Agreement Must Be Referred to the Arbitrator.

Any challenge Plaintiffs may assert to the validity or enforceability of their agreements to arbitrate must be submitted to the arbitrator according to the express terms of the Performer Contracts. The arbitration provisions in Plaintiffs' Performer Contracts contain clear and unequivocal delegation clauses which grant "EXCLUSIVE AUTHORITY" to the arbitrator to "RESOLVE ANY DISPUTES OVER THE ENFORCEABILITY OF THIS CONTRACT AND THE TERMS HEREIN, INCLUDING THIS ARBITRATION PROVISIONS." *Id.* at ¶ VIII (3).

This tool for saving judicial resources from the typical "kitchen sink" challenges to arbitration clauses was approved by the U.S. Supreme Court in *Rent-A-Center, West, Inc., v. Jackson,* 561 U.S. 63 (2010). There, the arbitration provision in dispute similarly reads: "The arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to, any claim that all or any part of this Agreement is void or voidable." *Id.* at 66. The Court described this "delegation provision," and explained:

> The delegation provision is an agreement to arbitrate threshold issues concerning the arbitration agreement. We have recognized that parties can agree to arbitrate "gateway" questions of "arbitrability," such as

5

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL ARBITRATION

220363199

> whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy. This line of cases merely reflects the principle that arbitration is a matter of contract. An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other. The additional agreement is valid under § 2 "save upon such grounds as exist at law or in equity for the revocation of any contract," and federal courts can enforce the agreement by staying federal litigation under § 3 and compelling arbitration under § 4.

*Id.* at 68-70 [citations and footnote omitted].

Here, the arbitration provisions in Plaintiffs' Performer Contracts clearly delegate the question of arbitrability to the arbitrator under all circumstances. Therefore, any challenges she may raise to the validity or enforceability of the arbitration provisions must be submitted exclusively to the arbitrator for decision.

### C. General Applicable Law Regarding Binding Arbitration.

In general, arbitration is strongly favored as a matter of public policy. *Izzi v. Mesquite Country Club,* 186 Cal.App.3d 1309 (1986). Arbitration agreements are to be liberally construed in favor of enforcement. *Coopers & Lybrand v. Superior Court,* 212 Cal.App.3d 530 (1986). This policy favoring arbitration is incorporated by inference into all contracts that contain arbitration clauses. *Freeman v. State Farm Mut. Auto,* 14 Cal. 3d 473 (1975). Any doubts as to construction should be resolved in favor of arbitration. *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1 (1975). The right of a party to bring a motion or petition to compel arbitration is set forth in California Code of Civil Procedure section 1281 et. seq.

"[P]arties to an arbitration agreement [may] expressly designate that any arbitration proceeding should move forward under the FAA's procedural provisions rather than under state procedural law." *Rodriguez v. American Technologies, Inc.,* 136 Cal.App.4th 1110, 1121 (2006). Here, the arbitration provisions in Plaintiffs' Performer Contracts expressly call for application of the FAA. Like California's substantive laws regarding arbitration, the FAA sets forth "a liberal federal policy favoring arbitration agreements, notwithstanding any state or procedural policies to the

contrary." *Rosenthal v. Great Western Financial Securities Corp.*, 14 Cal.4th 394, 405 (1996). It provides that a written arbitration clause in an agreement involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any agreement." *Id.* State law that would frustrate this rule is preempted. *Id.*; and *AT&T Mobility v. Concepcion* 131 S.Ct. 1740, 1753 (2011). Thus, "[t]he rule of enforceability established by §2 of the FAA preempts any contrary state law and it is binding on state courts as well as federal." *Id.* However, state procedural law applies to enforceability questions in state court, as long as it does not frustrate the FAA rule. *Id.* This Motion is governed by California Code of Civil Procedure section 1281 et seq., except where application of that section would frustrate section 2 of the FAA. The arbitration provisions in the Performer Contracts Plaintiffs signed require them to resolve "all disputes" between each of them and the nightclubs through individual binding arbitration. See Krontz Dec. Exhibit 2 at ¶ VIII (1).

By requiring the arbitration of "all disputes," the arbitration agreements apply to any and all claims between the parties, including those asserted by Plaintiff in her complaint. The arbitration provisions at issue could not be broader. Even if there were any doubts concerning whether the claims at issue are arbitrable, the strong public policy favoring arbitration would weigh in favor of Defendants' position. As such, the presumption that these claims should be arbitrated pursuant to the agreements to do so.

D. **It is Plaintiff's Burden to Establish that the Arbitration Agreement is Unenforceable.**

Plaintiffs bear the burden of establishing that the arbitration agreement is invalid. See *Crippen v. Central Valley RV Outlet, Inc.*, 124 Cal. App. 4th 1159, 1165 (2004). The party asserting unconscionability bears the burden of proof because it is a contract defense. *Sanchez v. Valencia Holding Co.*, LLC, 61 Cal. 4th 899, 910 (2015). Thus, "[t]he burden is on [Plaintiffs], as the party challenging the arbitration agreement, to prove both procedural and substantive unconscionability." *Serafin v. Balco Properties Ltd., LLC,* 235 Cal.App.4th 165, 178 (2015) (review denied June 10, 2015) (emphasis added).

1. <u>The Arbitration Provisions are Not Procedurally Unconscionable</u>

Procedural unconscionability focuses on the circumstances surrounding the negotiation of the contract. *Gatton v. T–Mobile USA, Inc.*, 152 Cal. App. 4th 571, 581 (2007). Specifically, procedural unconscionability can arise from oppression or surprise. *Armendariz v. Foundation Health Psychcare Services, Inc.* 24 Cal. 4th 83, 114 (2000). "Oppression arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice. *Bruni v. Didion*, 160 Cal. App. 4th 1272, 1288 (2008) [internal quotations omitted]. "Surprise involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms." *(Id.)*

Defendants did not engage in the type of "surprise or sharp practices" seen in instances where procedural unconscionability is found. *See Baltazar v. Forever 21, Inc.*, 62 Cal.4th 1237, 1245 (2016) [citing examples, such as being lied to, placed under duress, or manipulated].) Defendants do not present the Notice Form or Performer Contracts to entertainers if they appeared intoxicated or under the influence of any substance, and the clubs' do not strategically present the documents while entertainers are nude or partially nude, which has been alleged in other cases. See Krontz Dec. at ¶ 7. To the contrary, Defendants are committed to ensuring that entertainers fully understand the Performer Contracts. *Id.* at ¶ 8. To that end, it is their practice to have a nightclub manager or other management liaison review the paperwork with the entertainers to confirm they understand the documents. *Id.* Entertainers are free to take as much time as they need to review the Notice Form and Performer Contract and to ask any questions they may have; they are not rushed and may take the documents home to review with an attorney or advisor. *Id.* In the end, signing any and all paperwork has always been completely voluntary. *Id.*

As to the Performer Contracts themselves, they are relatively short, comprising of three to four pages and setting forth the arbitration provisions in capital boldface font on the last page directly above Plaintiffs signatures. The following language in the arbitration provision is

capitalized, bold, and underlined: "THE PARTIES WAIVE ANY RIGHT TO LITIGATE SUCH DISPUTES IN A COURT OF LAW, AND WAIVE THE RIGHT TO TRIAL BY JURY." (See Krontz Dec. Exhibit 2 at ¶ VIII (2).)

Entertainers are neither required to choose independent contractor status nor to sign a Performer Contract in order to perform at the nightclubs. In fact, the opening paragraph of each Performer Contract states:

> Sign this Contract ONLY if you genuinely agree with its terms. Read and consider it, seek the advice of counsel or a person you trust to assist you. BEFORE SIGNING, CONSIDER OWNER'S SEPARATE OFFER OF EMPLOYMENT.

Under these circumstances, there can be no dispute that Plaintiffs *voluntarily* declined employee status. Having chosen contractor status, Plaintiffs *voluntarily* executed their Performer Contracts, in which they each agreed to all terms including the binding arbitration provision. In sum, there is no indicia of procedural unconscionability.

### 2. The Arbitration Provisions Are Not Substantively Unconscionable

As the agreements are not procedurally unconscionable, there should be no need to analyze whether they are substantively unconscionable. Regardless, there are also no indicia of substantive unconscionability. To be substantively unconscionable, a contract must produce overly harsh or one-sided results. *Sonic-Calabasas A, Inc. v. Moreno,* 57 Cal.4th 1109, 1133 (2013). "A contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be so one-sided as to shock the conscience.'" *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC,* 55 Cal.4th 223, 246 (2012).

Here Plaintiffs cannot demonstrate the arbitration provisions in their Performer Contracts were one-sided, let alone that they were "so one-sided as to shock the conscience." To the contrary, the arbitration provisions call for application of the FAA, require the parties to agree upon a neutral arbitrator, allow Plaintiffs to pursue any claims they could pursue in court, and provide that both parties submit all disputes they have to binding arbitration. See Krontz Dec. Exhibit 2 at ¶ VIII. Moreover, the class action waivers are bilateral, applying to "both parties,"

and the arbitration provisions prohibit the arbitrator from consolidating any persons' claims or presiding over any type of representative or class proceeding. *Id.*

Finally, the Performer Contracts expressly state that "the costs of arbitration shall be assigned as required by law." *Id.* Thus Plaintiffs have no basis for arguing substantive unconscionability as to the cost of arbitration.

## IV. CONCLUSION

For the reasons stated herein, should the pending settlement between the parties fail to receive final approval from this court requiring further litigation, Defendants request that the court order the individual claims to arbitration.

Dated: October 18, 2018

CLARK HILL LLP

By: _____
Tammara N. Bokmuller
Attorneys for Defendants Attorneys for Defendants Déjà Vu Services, Inc., Harry Mohney, Grapevine Entertainment, Inc. d/b/a Déjà Vu Showgirls; Nite Life East, LLC d/b/a Little Darlings; SP Star Enterprise, Inc. d/b/a Déjà Vu; Coldwater, LLC d/b/a Deja Vu Showgirls; 3610 Barnett Ave., LLC d/b/a Adult Superstore; Jolar Cinema of San Diego, Ltd. d/b/a Jolar Cinema Showgirls; Showgirls of San Diego, Inc. d/b/a Deja Vu Showgirls; Bijou – Century, LLC d/b/a New Century Theatre; BT California, LLC d/b/a The Penthouse Club & Steakhouse; Chowderhouse, Inc., d/b/a Hungry I; Deja Vu – San Francisco, LLC d/b/a Centerfolds; Deja Vu Showgirls of San Francisco, LLC d/b/a Little Darlings of San Francisco; Gold Club – S.F., LLC d/b/a Gold Club; S.A.W. Entertainment, Ltd., d/b/a Hustler San Francisco and the Condor Club; San Francisco Garden of Eden, LLC d/b/a Garden of Eden; San Francisco Roaring 20's, LLC d/b/a Roaring 20's; and Stockton Enterprises, LLC d/b/a Deja Vu Showgirls